# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Mark Filip | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 8618 | **DATE** | 5/11/2004 |
| **CASE TITLE** | Directv, Inc. vs. Dale Ostrowski, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART DEFENDANT DALE OSTROWSKI'S MOTION TO DISMISS COUNTS III AND V OF PLAINTIFF'S COMPLAINT [12-1].

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAY 12 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 19 |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

| | |
|---|---|
| DIRECTV, Inc., ) | |
| ) | |
| Plaintiff, ) | Case No. 03 C 8618 |
| ) | |
| v. ) | Judge Mark Filip |
| ) | |
| DALE OSTROWSKI and WILLIAM R. ) | |
| OSTROWSKI, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART DEFENDANT DALE OSTROWSKI'S MOTION TO DISMISS COUNTS III AND V OF PLAINTIFF'S COMPLAINT

Plaintiff alleges that Defendants purchased and used a device to decrypt or unscramble Plaintiff's "DIRECTV" satellite programming and that Defendants then displayed this programming without authorization. The complaint includes five counts. Count I seeks relief under 47 U.S.C. § 605(e)(3)(C) for unauthorized interception and exhibition of copyrighted materials. Count II is brought under 18 U.S.C. § 2520 for interception, disclosure, or use of electronic communications in violation of 18 U.S.C. § 2511. Count III is brought under 18 U.S.C. § 2520 for possession, manufacture, or assembly of a device useful for the surreptitious interception of electronic communications in violation of 18 U.S.C. § 2512(1)(b). Count IV seeks damages under 47 U.S.C. § 605(e)(4) for assembly or modification of a device used primarily to facilitate unauthorized decryption of satellite programming. Count V asserts a cause of action for civil conversion under Illinois common law. Defendant Dale Ostrowski ("Defendant") has moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss Counts III

19

and V. For the reasons stated below, Defendant's motion to dismiss is granted as to Count III and denied as to Count V.

## LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint for failure to state a claim upon which relief may be granted." *Johnson v. Rivera*, 272 F.3d 519, 520-21 (7th Cir. 2001). In ruling on the motion, the Court accepts as true all well-pleaded facts alleged in the complaint and draws all reasonable inferences from those facts in favor of Plaintiff. *See, e.g., Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977-78 (7th Cir. 1999). Dismissal for failure to state a claim is not appropriate unless "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## DISCUSSION

A.  Count III

As noted above, in Count III, Plaintiff alleges that Defendant violated 18 U.S.C. § 2512(1)(b), a criminal statute which prohibits the manufacture, possession and assembly of certain interception devices. Section 2512(1)(b) does not itself prohibit interception, disclosure, or use of protected communications. Rather, such activities, among others, are proscribed by another criminal statue, 18 U.S.C. § 2511. The parties do not dispute that violations of § 2511 for interception, disclosure, or use are made civilly actionable by 18 U.S.C. § 2520. In fact, in Count II, Plaintiff is seeking relief under § 2520 for such alleged violations of § 2511 and Defendant has not moved to dismiss Count II.

2

Instead, the dispute before the Court centers on Plaintiff's contention that § 2520 also renders civilly actionable violations of § 2512(1)(b) for, among other things, possession and assembly of prohibited devices. Defendant argues that Count III should be dismissed because 18 U.S.C. § 2520 does not render civilly actionable such alleged violations of § 2512(1)(b).

This issue concerning whether § 2520 renders civilly actionable alleged violations of § 2512(1)(b) has split numerous district courts across the country and within this judicial district. Reasonable minds obviously can disagree as to which side has the better of the argument, but, as explained below, this Court respectfully rejects Plaintiff's position and agrees with Defendant that Count III should be dismissed.

Section 2520 states, in pertinent part, as follows

> Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

18 U.S.C. § 2520. The courts holding that § 2520 renders civilly actionable alleged possession and assembly of devices in violation of § 2512(1)(b) have reasoned that inclusion of the phrase "in violation of this chapter" in § 2520 should be understood to mean that a civil cause of action is available to redress a violation of any of the subsections of Chapter 119 of Title 18 of the U.S. Code (which includes Section 2512(1)(b) and its prohibition against possession and assembly of devices). *See, e.g., Directv, Inc. v. Perez*, 279 F. Supp. 2d 962, 964 (N.D. Ill. 2003); *Directv, Inc. v. Dillon*, No. 03-8578, 2004 WL 906104, at *2 (N.D. Ill. April 27, 2004); *Directv, Inc. v. Dyrhaug*, No. 03-8389, 2004 WL 626822, at *1 (N.D. Ill. March 26, 2004); *Oceanic Cablevision, Inc. v. M.D. Elecs.*, 771 F. Supp. 1019, 1027 (D. Neb. 1991).

3

The courts holding that § 2520 does not render civilly actionable alleged possession and assembly of devices in violation of § 2512(b), on the other hand, have interpreted § 2520 to provide a civil remedy only for violations involving actual *interception, disclosure or use* of *protected communications*. *See, e.g., Directv, Inc. v. Maraffino*, No. 03-3441, 2004 WL 170306, at *3 (N.D. Ill. Jan. 23, 2004); *Directv, Inc. v. Castillo*, No. 03-3456, 2004 WL 783066, at *1 (N.D. Ill. Jan. 2, 2004); *Directv, Inc. v. Delaney*, No. 03 C 3444, at 7-8 (N.D. Ill. Nov. 20, 2003); *Directv, Inc. v. Beecher*, 296 F. Supp. 2d 937, 942 (S.D. Ind. 2003). Or put differently, § 2520 does not render civilly actionable mere possession of dubious devices. For these courts, the portion of § 2520 which states that "any person whose wire, oral or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity . . . which engaged in *that violation*," 18 U.S.C. § 2520 (emphasis added), should be read so that the phrase "that violation" refers to "intercepted, disclosed, or intentionally used." *See Maraffino*, No. 03-3441, 2004 WL 170306, at *3 ("As a matter of grammar and sentence structure, the phrase 'that violation' must refer to the interception, disclosure, or intentional use of a communication . . . .") (citing *Beecher*, 296 F. Supp. 2d at 942).

Various courts have thoughtfully expressed the competing textualist arguments (neither litigant has cited any legislative history, and none of the precedent discusses any either), and this Court does not believe it has anything meaningful to add in that interpretive debate. The Court finds persuasive the view that the language of § 2520 is most fairly read to render actionable alleged violations involving interception, disclosure, or intentional use of communications, as contrasted with, for example, simple possession of dubious devices. *See, e.g., Beecher*, 296 F.

4

Supp. 2d at 941. On this basis, the Court would find that Count III should be dismissed.

The Court's conclusion is buttressed by a Fifth Circuit decision that perhaps has escaped the parties' attention and that lends support to the view that Count III should be dismissed. Specifically, in *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158 (5th Cir. 2000), the Fifth Circuit, in addressing the scope of civil liability delimited by § 2520, has held that the phrase "'that violation' [in § 2520] refers only to illegal interception, disclosure, or use." *Peavy*, 221 F.3d at 169. In *Peavy*, the plaintiff brought an action against defendants under § 2520 for violations of § 2511. However, the plaintiff sought to recover not only for the defendants' alleged interception, disclosure, and use of protected communications, but also sought to impose liability for the defendants' *procurement* of someone to intercept protected communications. *See id.* at 168-69. Notwithstanding the "in violation of this chapter" language of § 2520, and the fact that § 2511 itself does prohibit such procurement (*see* § 2511(1)(a)), the Fifth Circuit held that § 2520 does not render civilly actionable such procurement because "the referenced 'violation' is 'intercepted, disclosed, or intentionally used'; there is no mention of 'procures'." *Id.* at 169 (emphasis removed). *Peavy*'s holding that § 2520 does not reach to procurement violations in the context of interpreting the civil liability imposed by § 2520 and § 2511 supports the view that § 2520 and § 2512 do not reach as far as Plaintiff would like them in Count III, where Plaintiff seeks to impose liability without being required to prove interception, disclosure or use.

In summary, the Court agrees with the courts which have held that § 2520 does not provide for civil liability for possession and assembly violations of § 2512, and finds that *Peavy* lends further support for such a conclusion. By its terms, § 2520 does not render civilly actionable any and all violations of Chapter 119 of Title 18 of the U.S. Code. Rather, inasmuch

5

as § 2520 provides a civil remedy to "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter . . . from the person or entity . . . which engaged in that violation," "'that violation' refers only to illegal interception, disclosure, or use." *Peavy*, 221 F.3d at 169; *accord, e.g., Maraffino*, 2004 WL 170306, at *3. Because Count III does not seek to base liability on Defendant's alleged interception, disclosure, or use of protected communications, but rather on possession of devices, Count III is dismissed.

B.  Count V

In Count V, Plaintiff has asserted a cause of action for common law conversion under Illinois law. Plaintiff has alleged that Defendant, by his unauthorized interception and display of Plaintiff's satellite programming, has unlawfully deprived Plaintiff of its proprietary interests in that programming. To state a claim for conversion, Plaintiff must allege that (1) it has a right to the property; (2) it has an absolute an unconditional right to the immediate possession of the property; (3) it made a demand for possession; and (4) Defendant wrongfully and without authorization assumed control, dominion, or ownership over the property. *See Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998). Defendant essentially contends that Count V should be dismissed because intangible property such as Defendant's satellite programming cannot be the subject of conversion under Illinois law.[1]

As with the statutory question analyzed in the Court's discussion of Count III, the issue of whether alleged unauthorized interception and display of satellite programming meets the

---

[1] Defendant also frames his argument in terms of the Plaintiff's failure to allege a demand for or right to immediate possession. However, as at least one other court has noted, this is essentially another way of saying that the deprivation of intangible property is not an actionable conversion because intangible property often cannot be effectively demanded or returned. *See Directv, Inc. v. Delaney*, 03 C 3444, at 9 (N.D. Ill. Nov. 20, 2003).

6

elements of civil conversion under Illinois law has divided courts within this district. Five courts within this district have held that the tort of conversion does not lie in these circumstances. *See Directv, Inc. v. Hinton*, No. 03-8477, 2004 WL 856555, at * 4 (N.D. Ill. April 21, 2004) (Darrah, J.); *see also Directv, Inc. v. Frey*, No. 03-3476, 2004 WL 813539, at *4 (N.D. Ill. April 14, 2004) (Zagel, J.); *Directv, Inc. v. Maraffino*, No. 03-3441, 2004 WL 170306, at *4 (N.D. Ill. Jan. 23, 2004) (Lefkow, J.); *Directv, Inc. v. Castillo*, No. 03-3456, 2004 WL 783066, at *2 (N.D. Ill. Jan. 2, 2004) (St. Eve, J.); *Directv, Inc. v. Patel*, No. 03-3442, 2003 WL 22682443, at *3 (N.D. Ill. Nov. 12, 2003) (Coar, J.). Three courts have ruled that a cause of action was stated in similar cases. *See Directv, Inc. v. Dillon*, No. 03-8578, 2004 WL 906104, at *4 (N.D. Ill. April 27) (Aspen, J.); *see also Directv, Inc. v. Dyrhaus*, No. 03-8389, 2004 WL 626822, at *2 (March 26, 2004) (Shadur, J.); *Directv, Inc. v. Delaney*, No. 03 C 3444, at 8-10 (N.D. Ill. Nov. 20, 2003) (Kocoras, J.). As demonstrated by this division, the issue is a close one for which strong arguments have been made in support of both sides.

The difficulty in this area derives from the lack of Illinois caselaw directly on point and the somewhat unresolved nature of the Illinois caselaw that does exist. One Illinois Supreme Court case, *In re Thebus*, 483 N.E.2d 1258 (Ill. 1985), contains the following language "[i]n 18 Am.Jur.2d *Conversion* sec. 9, at 164 (1965), it is stated: 'It is ordinarily held . . . that an action for conversion lies only for personal property which is tangible, or at least represented by or connected with something tangible.'" *Thebus*, 483 N.E.2d at 1260 (ellipses added). The court then went on to state that "the subject of conversion is required to be an identifiable object of property of which the plaintiff was wrongfully deprived." *Id.* With these statements, *Thebus* does not by itself make clear whether intangible property ever can properly be the subject of

7

conversion in Illinois or if so, in what circumstances.

Three subsequent Illinois appellate court decisions have indicated that intangible property can, at least in some cases, be the basis of a conversion action. In *Conant v. Karris*, 520 N.E.2d 757 (Ill. App. Ct. 5th Dist. 1987), the court did not use the term "intangible property," but it nonetheless held that a conversion action was stated where plaintiff alleged that a real estate broker learned a client's confidential information about the valuation of a specific property and then used the information to generate the broker's own competing and successful bid for the property. *See id.* at 763. However, the tangible versus intangible property issue appears to not have been squarely litigated, as the principal issue before the court of appeals (which reversed the trial court's dismissal of the count) was whether the plaintiff was deprived of the use of his confidential information, given that he always retained a copy of it himself. *See id.* ("As we have discussed, the complaint sufficiently alleges that the information in this printout was used by defendants. Once confidential information is released to competitors, it hardly can be said that the data is still confidential."). Oftentimes decisions that resolve an issue without it being the subject of a direct adversarial clash before the court are not viewed as being entitled to significant precedential weight on that point. *See generally Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993) (teaching that if a decision does not "squarely addres[s] [an] issue," the Court remains "free to address [it] on the merits" at a later time); *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) (holding that where an issue was not "raised in briefs or argument nor discussed in the opinion of the Court," "the case is not a binding precedent on this point"); *Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not considered as having been so decided

8

as to constitute precedents.").

Nonetheless, *Conant* takes on added weight because in *Stathis v. Geldermann, Inc.*, 692 N.E.2d 798 (Ill. App. Ct. 1st Dist. 1998), another Illinois appellate court relied on *Conant* to flatly assert that "[i]n this State . . . parties may recover for conversion of intangible assets." *Id.* at 807 (citing *Conant*). Moreover, *Stathis* reached this conclusion in the process of rejecting the defendants' argument that plaintiff was precluded from asserting "a claim for conversion because the assets allegedly converted were intangible in nature." *Id.* Further, *Stathis* assumed for purposes of argument that the conversion of a controlling interest in a partnership could be legally cognizable—although *Stathis* found that the jury verdict rejecting the conversion theory was not against the manifest weight of the evidence, so the verdict was upheld. *Id.*

The third Illinois appellate court case to address the subject in the wake of *Thebus*, *Bilut v. Northwestern University*, 692 N.E.2d 1327 (Ill. App. Ct. 1st Dist. 1998), stated that the Illinois "supreme court has stated that an action for conversion lies only for personal property that is tangible or at least represented by or connected with something tangible." *See id.* at 1334 (citing *In re Thebus*, 483 N.E.2d at 1260). Although *Bilut* barred the asserted conversion cause of action on statute of limitations grounds, *Bilut* stated that alleged plagiarism of the ideas in a research paper could be the subject of a conversion action "because the printed copy of the research constituted tangible property." *Id.*

The courts in this district holding that a conversion action properly can be maintained to remedy interception and use of satellite programming have concluded that the existing Illinois appellate court authority supports this view. In particular, these courts have analogized the deprivation of the right of the plaintiff in *Conant* to keep its information confidential with the

9

deprivation of the "right of exclusive control" Plaintiff was deprived of with respect to its satellite programming. *See Directv, Inc. v. Delaney*, 03 C 3444, at 9-10 (N.D. Ill. Nov. 20, 2003). The courts holding that a conversion claim is not cognizable in these circumstances, in contrast, have distinguished the Illinois appellate court cases on grounds that "[i]n every Illinois conversion case involving intangible property, the Plaintiff has been deprived of the ability to benefit from the object of the alleged conversion. In this case, DirecTV continued to benefit from its encrypted satellite television signal . . . ." *See, e.g., Patel*, 2003 WL 22682443, at *3.

As noted above, there is no clear answer in the Illinois caselaw on this issue and both views have meaningful support. In the end, the Court has cast its vote with the courts finding that the tort of conversion is available in cases such as this one. In large part, this conclusion results from the analysis of the tort of conversion and intangible property rights conducted by the Seventh Circuit in *FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300 (7th Cir. 1990), another case that perhaps has escaped the parties' attention. At issue in *FMC Corp.* was whether the defendant was liable for conversion for failing to provide the plaintiff with either the originals or copies of documents containing plaintiff's confidential business information which the plaintiff had lost. *See id.* at 301-03. Although the Seventh Circuit resolved a threshold choice of law debate by deciding that the conversion issue should be analyzed under California law, the Seventh Circuit stated that

> We believe that the particular choice of law is not crucial in this case. While the facts of this case may present a novel question, our analysis does not. The same result would be reached under the conversion and replevin laws of most states. As one district court recently noted, "[t]he principles of what conduct constitutes conversion are universal."

*Id.* at 302 n.2 (quoting *P.M.F. Servs., Inc. v. Grady*, 703 F. Supp. 742, 743 n.1 (N.D. Ill. 1989)).

10

The court held that the tort of conversion was sufficiently alleged. *See id.* at 305-06.

Of particular consequence for present purposes, in *FMC Corp.*, the Seventh Circuit stated that "As Prosser and Keeton have noted . . . '[t]here is perhaps no very valid and essential reason why there might not be conversion' of intangible property." *Id.* at 305 (quoting *Prosser & Keeton on the Law of Torts* ch. 3, § 15, at 92). Further, the Seventh Circuit cited *Conant* as an example of "what appears to be the modern trend of state law in protecting against the misuse of confidential business information through conversion actions." *See id.* (citing *Conant*). And the Seventh Circuit gave no indication that the deprivation of such intangible property is cognizable in a conversion action only where the plaintiff is "clearly deprived of the ability to obtain any benefit from the objects of the alleged conversions." *See Hinton*, 2004 WL 856555, at *4. In fact, in one of the three cases the Seventh Circuit cited as examples of the "modern trend" toward protecting confidential business information through the tort of conversion, it is clear that the claimant was not denied the entire benefit of the converted property. *See Datacomm Interface, Inc. v. Computerworld, Inc.*, 489 N.E.2d 185, 194 (Mass. 1986). In *Datacomm*, the claimant sought to impose liability on a competitor for its use of a copy of a magazine circulation list owned by the claimant. *See id.* at 194-95. The claimant had its own copy of the list to use for circulation and marketing of its magazines. *Id.* Nonetheless, the Massuchusetts Supreme Judicial Court held that the competitor could be held liable for conversion for its unlawful use of the claimant's circulation list. *Id.*

Additionally, in *FMC Corp.*, the Seventh Circuit explained that "[f]or purposes of conversion, it is not the intent to steal or pilfer property that matters, but rather 'an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's

11

rights.'" *FMC Corp.*, 915 F.2d at 304 (quoting *Prosser & Keeton on the Law of Torts* ch. 3, § 15, at 92). While it cannot fairly be stated in the case *sub judice* that Defendant is alleged to have completely deprived Plaintiff of the ability to obtain any benefit from its satellite programming, it also cannot fairly be said that Defendant's alleged unauthorized use of such programming was consistent with Plaintiff's rights. Thus, under the general teachings concerning the tort of civil conversion articulated by the Seventh Circuit in *FMC Corp.*—which are particularly significant given the unresolved nature of Illinois law in this area, and which this Court suspects would carry substantial weight with Illinois courts if they were deciding the precise issue *sub judice*—it appears that Plaintiff has stated a claim. Accordingly, Defendant's motion to dismiss Count V is denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted as to Count III and denied as to Count V.

Mark Filip
United States District Judge
Northern District of Illinois

Enter: May 11, 2004

12